Littleton, Judge,
delivered the opinion of the court:
In this case the defendant does not question the validity of the patents in suit, nos. 1050441 and 1050728, nor does it deny the installation and use of apparatus embodying the inventions covered by these patents by the Navy Department in the operation of the wireless telegraph station at Tucker- *102 ton, New Jersey, during the period September 9, 1914, to April 6, 1917, while it was under the control of and being operated by the United States, as set forth in the findings.
The petition insofar as it related to reissue patent no. 12168 covering the radio-sending apparatus was dismissed by this court on defendant’s motion on the ground that the benefits of the act of July 1,1918, 40 Stat. 704, did not inure to the owner of reissue patent no. 12168 because the inventor thereof was in the employ of the United States Government at the time the application for the patent was filed. This patent, therefore, is not involved in the issues now before the court.
The Fessenden patents, nos. 1060441 and 1060728, have been before the courts many times and have been held valid. Kintner et al. v. Atlantic Communication Co. et al., 241 Fed. 956; International Signal Co. v. Vreeland Apparatus Co.. Inc., et al., 278 Fed. 468; Kintner et al. v. Atlantic Communication Co. et al., 294 Fed. 136; Westinghouse Electric & Mfg. Co. et al. v. Taub, 4 Fed. (2d) 605; Westinghouse Electric & Mfg. Co. et al. v. Precise Mfg. Corp., 11 Fed. (2d) 209; National Electric Signaling Co., et al. v. United States, C-26, decided by this court January 9, 1933, 76 C.Cls. 545.
The defendant first suggests that plaintiffs’ suit is one for the recovery of profits derived from operation of the Tuckerton station and should therefore be dismissed because (1) there is no authority in law for such a remedy as against the United States in this court, and (2) profits in general are not recoverable from one who accumulates them as a representative of and for the benefit of another and who does not enjoy or participate in such profits. A sufficient answer to the first point is that this suit was specifically brought under the act of June 25, 1910, as amended by the act of July 1, 1918, to recover just and reasonable compensation for the unauthorized use by the defendant of plaintiffs’ patented inventions and not for the recovery of profits as such.
Plaintiffs alleged in their petition the total net profits collected by the United States between September 9, 1914, and April 6, 1917, from the operation of Tuckerton station to be in the amount of $428,047.29; that the earning of *103 this amount was made possible by the use of their inventions, and contended that “ defendant is liable for that proportion of the sum of $428,047.29 which shall be found in a subsequent accounting proceeding to be just compensation,” for the unlicensed use of their inventions under the aforementioned statutes. It is clear, however, from the petition and the record that the suit is brought under the provisions of the acts of June 25, 1910, and July 1, 1918, to recover compensation for the unlicensed use of the patents in question. The fact that plaintiffs refer to the net profits derived from the operation of the station by the defendant as indicating what they regard, in part at least, as the just compensation to which they are entitled under the statutes, does not require that the petition be dismissed. In determining just and reasonable compensation when validity and infringement of patents have been established, profits and royalties earned by and from such patents may be taken into consideration. The question of the amount of compensation to which the plaintiffs may be entitled is not now before the court. That question was by stipulation reserved for further proof until the question of plaintiffs’ right to recover has been determined.
The second point above mentioned will be considered with a third contention made by the defendant in a supplemental brief that plaintiffs have no right of action under the acts of 1910 and 1918 under the facts in this case for the reason that, first, Congress did not in the enactment of these acts contemplate a case of this nature and the United States has not, therefore, given its consent to be sued herein, and second, the words of the acts “ or lawful right to use the same” establish a class of exceptions from the operation of those acts and that the act of August 13, 1912, 37 Stat. 302, regulating foreign and interstate radio communication, created such an exception.
We are of the opinion that the facts in this case bring it squarely within the provisions of the acts of 1910 and 1918 and that plaintiffs are entitled to compensation for the"' unauthorized use of their inventions, and we are also of opinion that the act of August 13,1912, supra, entitled “An act to regulate radio communication”, did not give the United *104 States the lawful right to use patented inventions in the manner in which the inventions of the plaintiffs were used by it in the operation of the Tuckerton wireless station, without the payment of just compensation.
The facts establish beyond question that at the time the Tuckerton wireless station was taken over by the Navy Department under Executive order, it was equipped with receiving apparatus and received messages by a method which did not infringe plaintiffs’ patents in suit; that at or soon after September 9, 1914, when the Government took possession and control of Tuckerton station and commenced the operation thereof, the Navy Department partially destroyed the receiving apparatus which had theretofore been installed by the builders of the station and substituted therefor apparatus and methods of receiving messages which infringed patents nos. 1050441 and 1050728. The receiving apparatus which thus infringed the patents of the plaintiffs was installed and used by the direction of the Secretary of the Navy. The testimony of the Navy Department official who installed the infringing heterodyne receiving apparatus, and who was in charge of the operation of the said wireless sta- • tion, also establishes that the net earnings from the operation -of the station were due in large measure to the use of plaintiffs’ inventions. In these circumstances, it seems obvious that the Government is liable to plaintiffs for just compensation for the unauthorized use by it of the plaintiffs’ patented inventions and that it may not escape payment on the ground that the net tolls collected from the sending and receipt of trans-Atlantic messages at this station were paid over to the representatives of the French and the German corporations who had constructed the station. The infringment of the patents in suit cannot be attributed to the French and the German corporations inasmuch as the infringing apparatus was not a part of the station at the time it was taken over ■and operated by the defendant and, also, for the reason that • such apparatus was installed and used by the defendant during the period it operated the station in its own right, under section 2 of the act of August 13, 1912, supra, and not as agent of the two corporations. In these circumstances it is not necessary to enter into a discussion of whether the United *105 States would be liable for just compensation to the plaintiffs for the use of their patented inventions if the infringing apparatus had been a part of the station at the time it was taken over, although it would seem that under a proper interpretation of section 2 of the act of August 13, 1912, the Government would be liable under such circumstances, for the act does not require that whatever net profits may be earned shall belong to and be turned over to the owners of the station but that just compensation shall be paid to such owners.
The above-mentioned act to regulate foreign and interstate radio communication is, in the main, purely a regulatory statute. It provides in section 1 that no person within the jurisdiction of the United States shall use or operate any apparatus for radio communication as a means of commercial intercourse among the several States, or with foreign nations, or upon any vessel of the United States engaged in interstate or foreign commerce, or for the transmission of radiograms or signals, the effect of which extends beyond the jurisdiction of the State or Territory in which the same are made, or where interference would be caused thereby with the receipt of messages or signals from beyond the jurisdiction of the said State or Territory, except under and in accordance with a license, revocable for cause, in that behalf granted by the Secretary of Commerce and Labor upon application therefor; that any person that shall use or operate any apparatus for radio communication in violation of this act, or knowingly aid or abet another person, company, or corporation in so doing, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five hundred dollars, and the apparatus or device so unlawfully used and operated may be adjudged forfeited to the United States.
Section 2 of the said act provides—
“ That every such license shall provide that the President of the United States in time of war or public peril or disaster may cause the closing of any station for radio communication and the removal therefrom of all radio apparatus, or may authorize the use or control of any such station or apparatus by any department of the Government upon just compensation to the owners.”
*106 The Tuckerton wireless station was taken over and operated by the defendant under the above-quoted provision of section 2, which clearly requires the payment of just compensation. Inasmuch as the act specifically provided for the payment of just compensation for the closing out or control of any radio station or apparatus, we think it is clear that the act did not intend and may not be construed to establish an exception to the acts of 1910 and 1918 relating to the payment of just compensation for the unauthorized use of patents so as to give the United States a lawful right to use patented inventions in the use and control of any radio station or apparatus under the provisions of section 2.
On the whole we are of opinion that the heterodyne patents, nos. 1050441 and 1050128, are valid and infringed, and that the plaintiff, the International Radio Telegraph Company, now the International Devices Company, is entitled to recover just compensation for the unauthorized use thereof by the defendant at the Tuckerton, New Jersey, wireless station during the period September 9, 1914, to April 6, 1917, and the said plaintiff is given judgment on said patents. The case is referred to a commissioner of the court with instructions to take proof with respect to the amount of compensation due the International Devices Company for the period September 9, 1914, to April 6, 1917. It is so ordered.
Whaley, Judge; Williams, Judge; and Green, Judge, concur.
Booth, Chief Justice, took no part in the decision of this case on account of illness.